UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY LAUTERBORN,                    :
                                        :
          Plaintiff                     :    No. 4:CV-05-2432
                                        :
     vs.                                :    (Complaint filed 11/22/05)
                                        :
R & T MECHANICAL, INC.,                 :    (Judge Muir)
                                        :
          Defendant                     :

ORDER

October 30, 2006

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On November 22, 2005, Plaintiff Kimberly Lauterborn
initiated this action by filing a complaint containing two claims
pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e, *et seq*.  Both of Lauterborn's claims relate to sexual
harassment she suffered in connection with her employment at
R & T Mechanical, Inc.

On September 8, 2006, R & T Mechanical, Inc., filed a motion
for summary judgment together with a supporting brief, statement
of undisputed material facts, and exhibits were filed with the
motion.  On September 26, 2006, Lauterborn filed her opposing
brief, response to the movant's statement of undisputed material
facts, counter-statement of facts, and exhibits.  Although the
brief was filed one day beyond the time allowed by the local
rules, we will accept it as having been timely filed.  R & T

Mechanical, Inc., filed a reply brief on October 11, 2006, thereby ripening its summary judgment motion for disposition.

Summary judgment is appropriate only when there is no unresolved genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56©. Summary judgment should not be granted when there is a disagreement about the material facts or the proper inferences which a fact finder could draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.  "When a motion for summary judgment is made and supported as provided in ...[Rule 56], an adverse party may not rest upon mere allegations or denials of the adverse party's pleading...."  Fed. R. Civ. P. 56(e).

Rule 56 provides that, where such a motion is made and properly supported, the adverse party must show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).  The United States Supreme Court has commented

2

that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in their favor. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986).

Because summary judgment is a severe remedy, the Court should resolve any doubt about the existence of genuine issues of fact against the moving party. Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981).

The United States Supreme Court has stated that in motions for summary judgment a material fact is one which might affect the outcome of the suit under relevant substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The Supreme Court also stated in Anderson that a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 587 (1986).

The Court of Appeals for the Third Circuit has commented that "this standard is applied with 'added rigor in employment discrimination cases, where intent and credibility are crucial issues.'" Hankins v. City of Philadelphia, 189 F.3d 353, 363 (3d

Cir. 1999)(quoting Robinson v. PPG Indus., Inc., 23 F.3d 1159, 1162 (7th Cir. 1994)).  We will apply those principles to the pending summary judgment motion.

In considering the motion's merits, we rely upon the following undisputed facts to decide whether a reasonable jury, based upon the evidence of record, could find in favor of Lauterborn on one or both of her claims.

R & T Mechanical, Inc., was formed and began operations in 1987.  Timothy Baughman is the owner and president of R & T Mechanical, Inc.  The corporation is an industrial contractor which specializes in pipe-fitting, millwright work, rigging, metal fabrication, crane rentals, and industrial concrete.

At all relevant times R & T Mechanical, Inc., had an open door policy and a policy prohibiting immoral conduct.  We interpret the phrase "open door policy" to mean that Baughman's door was always open to any one wishing to pursue a work-related grievance, such as a claim of sexual harassment.

In 1988 or 1989, R & T Mechanical, Inc., hired Robert Savidge as an Installation Foreman.  Savidge and Baughman were personal friends.  Savidge eventually became general manager of R & T Mechanical, Inc.'s, north division which was headquartered in Lawrenceville, Pennsylvania.  Savidge's duties included the hiring and firing of R & T Mechanical, Inc.'s, north division

4

employees.  Savidge's only supervisor at R & T Mechanical, Inc., was Baughman.

On February 5, 1997, Savidge hired Arthur Weiler, Jr., as an employee at R & T Mechanical, Inc.'s, north division.  In 2001 Weiler became a General Supervisor at the corporation's office in Lawrenceville, Pennsylvania.  Savidge was Weiler's immediate supervisor.

In June of 1998 Savidge hired Lauterborn to work at R & T Mechanical, Inc.'s, north division.  Before coming to work for R & T Mechanical, Inc., Lauterborn had no mechanical skills and no experience in metal fabrication or in any form of construction or building-related work.  Lauterborn's husband had previously been hired at R & T Mechanical, Inc.'s, north division.  Throughout her employment at R & T Mechanical, Inc., either Weiler or her husband was Lauterborn's immediate supervisor.

In October or November of 1998, Savidge began engaging in inappropriate sexually-charged behavior towards Lauterborn.  In general, Savidge's behavior consisted of talking to Lauterborn about his family problems, begging Lauterborn to come to his motel room, offering Lauterborn money for sex, and promising that her husband would never discover their relationship.  Savidge also grabbed her buttocks, smacked her buttocks, and tried to kiss her.  Although Lauterborn never acquiesced in Savidge's sexual advances, she did from time to time accept the money that

he offered to her.  In total Lauterborn accepted six or seven hundred dollars from Savidge.

From 1999 through 2004, Lauterborn played in the same pool league as Savidge and in addition to playing pool with him on those league nights she shot pool with him every Tuesday and Thursday.  Even when the pool league was over, Lauterborn would go to the bar and drink with Savidge at least two times per week.

In the spring of 2001, Weiler confronted Savidge regarding Savidge's sexual harassment of Lauterborn which resulted in Savidge telling Lauterborn "to keep her mouth shut."  Although Savidge knew that Lauterborn had complained to Weiler, he did not take any adverse action against either Lauterborn or her husband.

Weiler repeatedly told Lauterborn to report Savidge's behavior to R & T Mechanical, Inc.'s, president, Timothy Baughman.  Weiler guaranteed that she would not lose her job if she reported Savidge's sexual harassment to Baughman.

Another female employee of R & T Mechanical, Inc., in its north division facility was Judy Hitman.  Hitman was friend of Lauterborn's and Hitman told Lauterborn to inform Baughman about Savidge's sexual harassment.

A third friend and co-worker of Lauterborn, Roger Hurd, told Lauterborn that she should inform Baughman about Savidge's sexual harassment.

Despite those suggestions by her co-employees, Lauterborn did not report any of Savidge's sexual harassment to Baughman. She also "begged" Weiler not to inform Baughman of Savidge's harassment.

From 2002 until the end of her employment at R & T Mechanical, Inc., Lauterborn's immediate supervisor was her husband, Theodore Lauterborn.  Lauterborn never reported any of Savidge's sexual harassment to her husband and her husband never became aware of it while she was employed at R & T Mechanical, Inc.

In the summer of 2003, Weiler again confronted Savidge about Savidge's sexual harassment of Lauterborn.  Although Savidge's sexual harassment of Lauterborn was less egregious after that confrontation, Savidge continued to make comments to Lauterborn that were inappropriate because of their sexual content.

In June of 2004 Lauterborn volunteered to work on a job in Alabama.  The total number of people working on the Alabama job site, including those not employed by R & T Mechanical, Inc., was over one hundred.  R & T Mechanical, Inc., needed every possible worker it had to work on the Alabama job.

Lauterborn made two trips to Alabama and each trip was expected to last two weeks.  While in Alabama Lauterborn worked solely on the night crew, which was supervised by Weiler. Another employee of R & T Mechanical, Inc., Greg Nagy, was the

supervisor of the day crew.  There was little communication and no interaction between the day and night crews.  Lauterborn did not experience any unwelcome sexual advances or sexual harassment during the first trip.

Also in June of 2004, Hitman complained to Weiler about Savidge's continued sexual harassment of Lauterborn.  Savidge had also been sexually harassing Hitman.  On a number of occasions Savidge offered Hitman money to have sex with him.

When Weiler and Lauterborn were in Pennsylvania during June or July of 2004, on a break from the Alabama job, Weiler discussed with Lauterborn Hitman's allegations relating to Savidge's sexual harassment of Lauterborn.  Lauterborn confirmed that Hitman's allegations were true.  After he confirmed Hitman's story, Weiler met with Baughman to tell him that Savidge had been acting inappropriately towards Lauterborn.  That same day Baughman met with Lauterborn to confirm Weiler's story.  During these discussions concerning Lauterborn, Baughman learned that Savidge was also sexually harassing Hitman.

When Baughman met with Lauterborn to discuss Savidge's harassment, he did nothing to make her feel uncomfortable. Baughman requested Lauterborn to recount all of Savidge's harassment in a letter to Baughman.  Baughman contacted R & T Mechanical, Inc.'s, legal counsel to discuss Savidge's sexual harassment.

Shortly after learning about Savidge's sexual harassment of Lauterborn, Baughman confronted Savidge.  Savidge stated that he and Lauterborn were involved in a sexual relationship and Baughman immediately terminated Savidge's employment.  Only Savidge and Baughman were present when Baughman took that action.  At no time did Baughman require or suggest that Lauterborn directly confront Savidge.  Baughman's decision to terminate Savidge's employment was based on the complaints of both Lauterborn and Hitman.

After Baughman terminated the employment of Savidge, Lauterborn understood that Baughman would not tolerate harassment of any kind.  She also knew that she was required immediately to report any future harassment to Baughman.

Except for Savidge, no employee of R & T Mechanical, Inc., ever made inappropriate comments directly to Lauterborn.  However, after the termination of Savidge's employment, employees who had liked Savidge (including Greg Nagy) told Lauterborn that they "would stick up for [Savidge]."

Lauterborn was subsequently sent to Alabama for a second two-week shift.  Lauterborn was not sent to Alabama in retaliation for reporting Savidge's sexual harassment.  No employee of R & T Mechanical, Inc., wanted to go to Alabama.  When sent the second time, Lauterborn knew that she was required to stay there for two weeks.

Throughout Lauterborn's second stay in Alabama, she experienced unwanted sexual advances and inappropriate behavior from men at the job site.  During that trip three or four different men approached Lauterborn and asked her to go on dates or go out to eat.  Lauterborn's male co-workers were also asked to go out for drinks or dinner.  The men who approached Lauterborn were not employed by R & T Mechanical, Inc., and none of them made lewd remarks or propositioned Lauterborn for sex.

During that second shift in Alabama, Nagy made sexually-charged statements about Lauterborn to other men working at the Alabama job site.  Nagy's statements were to the effect that Lauterborn was "easy" and "if Lauterborn wanted to work in a man's world she should take it like a man."  Nagy had greater seniority than Lauterborn at R & T mechanical, Inc., and he was one of her supervisors on the Alabama job.

While on the Alabama job, Lauterborn never heard anyone say that she was "easy," or that "if Lauterborn wanted to work in a man's world she should take it like a man."  No employee of R & T Mechanical, Inc., and no one on the Alabama job under the control of R & T Mechanical, Inc., directly harassed Lauterborn or directly subjected her to any sexually inappropriate behavior.

Also during that second trip to Alabama, an unknown man descending a staircase at Lauterborn's hotel called out her name and tried to approach her.  She avoided him by hurrying into her

room.  The following day at her hotel, the hotel manager told her the following: "Kim, two guys were just looking for your room.  I did not know if you knew them, so I put them through to Art [Weiler]'s room."  When Lauterborn relayed those statements to Weiler, Weiler told Lauterborn that he had received two phone calls in which the callers immediately hung up when Weiler answered the phone.  Weiler and Lauterborn inferred that the two men who had approached the hotel manager in their attempt to locate Lauterborn's room were the individuals who had called and hung up on Weiler.

The incidents relating to the two men who approached the hotel manager and the two unusual phone calls received by Weiler made Lauterborn nervous.  Because of those events Lauterborn decided to return to Pennsylvania.

On Thursday, July 15, 2004, Lauterborn telephoned Baughman from Weiler's hotel room with Weiler present.  Lauterborn told Baughman that she needed to leave Alabama because 1) she had to take care of her son who she stated was home alone, and 2) she needed to talk to Baughman in person.  Baughman knew that Lauterborn's husband was home with their son, so he queried Lauterborn about that fact.  He wanted to know why Lauterborn felt the need to return to Pennsylvania.  Baughman explained to Lauterborn that no employee of R & T Mechanical, Inc., wanted to

be in Alabama, and that if he allowed Lauterborn to return home
he would have to allow every one of his employees to return home.

Both Baughman and Lauterborn knew that R & T Mechanical,
Inc., had a lot of problems in Alabama, a lot of work, and that
the job required all the people that R & T Mechanical, Inc.,
could possibly have working on the site.

Lauterborn knew on July 15, 2004, that if she informed
Baughman of the harassment she had experienced in Alabama he
would travel to Alabama and address the situation.  However,
during their telephone conversation on July 15, 2004, Lauterborn
purposely decided not to mention any sexual harassment to
Baughman.  When asked in her deposition why she made that
decision Lauterborn stated the following:

> ... if I would have had to stay down there and wait for him
> to come down and confront those guys with me there or even
> for him to call them, I don't know what I would have had to
> deal with with my co-workers being told ["]you know, well,
> Kim's saying this and Kim's saying that.["]  Why am I going
> to stay down there and work with these people[?]

(Lauterborn Deposition of July 13, 2006, p. 182, lines 17-24)  At
another point in her deposition, Lauterborn explained her
rationale in these terms: " ... I was not going to be stuck there
and to have him make me face all the guys to tell what was going
on." (Id., p. 192, lines, 16-18)  Even before Lauterborn
telephoned Baughman, he was scheduled to travel to the Alabama
job site the following week.

Baughman instructed Lauterborn that she could not leave Alabama unless she received approval to do so from both Weiler and Nagy.  He also stated that if she left Alabama, "I don't know if there will be work for you" in Pennsylvania.  At the conclusion of their conversation Lauterborn intended to report to Baughman's office on Monday morning.

Weiler agreed to allow Lauterborn to return to Pennsylvania. Lauterborn made no attempt to obtain Nagy's approval before leaving Alabama.  When asked in her deposition to explain why she failed to follow Baughman's instruction, Lauterborn stated the following:

> [Nagy's] always complained about me.  I'm not going to go to [Nagy].  If it costs my job it costs my job, but I'm not going to go to [Nagy].

(Lauterborn Deposition of July 30, 2006, p. 238, lines 2-4)

Lauterborn returned to Pennsylvania on Friday, July 16, 2004, without discussing the matter with Nagy.  At some point over the ensuing weekend, Lauterborn talked to Weiler's son, Arthur Weiler, III.  Weiler's son informed Lauterborn that another worker at the Alabama job site (not employed by or under the control of R & T Mechanical, Inc.) had made sexual comments about Lauterborn to him.

On the morning of Monday, July 19, 2004, Lauterborn went to R & T Mechanical, Inc., to speak with Baughman.  Baughman called Lauterborn back to his office and stated "Now, I did tell you,

that I might not have work for you."  Lauterborn responded "Yes, and as you can see, I did not wear my work clothes in."

At that point Lauterborn divulged to Baughman, for the first time, the fact that she had requested to return to Pennsylvania because of the events in Alabama which Lauterborn had perceived as sexual harassment.  Lauterborn stated to Baughman that she had been sexually harassed in Alabama.  In response Baughman repeatedly asked "Well, how can I believe you?"

Lauterborn proceeded to describe the sexual rumors being spread about her at the Alabama job site.  Baughman put his hand up as a signal for her to stop and he turned his head away from her.  According to Lauterborn, Baughman also implied that Lauterborn was attempting to use fabricated claims of sexual harassment to relieve Lauterborn of her continuing obligation to work in Alabama.  Baughman stated "Well, Kim, what do you want me to do?  I spent a lot of money training these guys."  Lauterborn never responded to that question.

Lauterborn ended the conversation by starting to walk out of Baughman's office.  Baughman inquired "Is that the end of our conversation?"  Lauterborn ignored Baughman's query and walked out of the building without responding.  At no point in that conversation did Baughman tell Lauterborn that her employment at R & T Mechanical, Inc., was terminated.

We will apply those facts to the pending summary judgment motion.  The two claims asserted in Lauterborn's complaint are that 1) during her employment with R & T Mechanical, she "was subjected to a sexually hostile work environment and was discriminated against on the basis of her sex," (Complaint, p. 3, ¶20); and 2) "subsequent to making a complaint ... alleging sexual discrimination and/or harassment, Defendant retaliated against Plaintiff Kimberly Lauterborn ...." (Id., p. 4, ¶23)

As a threshold matter, R & T Mechanical, Inc., contends that Lauterborn's claims based on Savidge's conduct are time-barred because she filed her complaint with the Pennsylvania Human Relations Commission more than 180 days after the last incident of sexual harassment involving Savidge.  This argument is based on the premise that Savidge did not sexually harass Lauterborn after mid-November of 2003.

According to Lauterborn's deposition testimony, Savidge continued to harass her up until the termination of his employment in June of 2004.  R & T Mechanical, Inc., has not produced any evidence of record to dispute that testimony. Consequently, Lauterborn's Pennsylvania Human Relations Commission complaint was timely filed and the claims in this action based on Savidge's conduct in this action are not time-barred.

We next consider whether summary judgment should be granted on Lauterborn's claim in count 1 that R & T Mechanical, Inc., violated Title VII by subjecting her to a sexually hostile work environment and discriminated against her on the basis of her sex.  The following five elements are required to establish a prima facie case on such a claim

> (1) the employee ... suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability.

Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir.1999) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir.1990)).

United States Supreme Court precedent has "divided the universe of supervisor-harassment claims according to the presence or absence of an official act [by the employer], ...." Pennsylvania State Police v. Suders, 542 U.S. 129, 150, 124 S. Ct. 2342, 2357 (2004).  In the cases of <u>Faragher v. Boca Raton</u>, 524 U.S. 775, 118 S. Ct. 2275 (1998), and <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 118 S. Ct. 2257 (1998), the United States Supreme Court held that

> an employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." ...  But when no tangible employment action is taken, both decisions also hold, the employer may raise an affirmative defense to liability, subject to proof by a preponderance of the evidence: "The defense comprises two necessary elements: (a)

16

that the employer exercised reasonable care to prevent and
correct promptly any sexually harassing behavior, and (b)
that the plaintiff employee unreasonably failed to take
advantage of any preventive or corrective opportunities
provided by the employer or to avoid harm otherwise."

Pennsylvania State Police v. Suders, 542 U.S. 129, 137-138, 124

S. Ct. 2342, 2349 (2004).  R & T Mechanical, Inc., asserts that

it is entitled to summary judgment on Lauterborn's claim in count

1 relating to Savidge's harassment based on the affirmative

defense discussed in Faragher, Ellerth, and Suders.

R & T Mechanical, Inc., argues that the evidence of record

fails to show the existence of any *respondeat superior* liability

because 1) the corporation exercised reasonable care to prevent

and correct promptly any sexually harassing behavior, and 2)

Lauterborn unreasonably failed to take advantage of any

preventive or corrective opportunities provided by the employer

or to avoid harm otherwise.

In support of its position that R & T Mechanical, Inc.,

exercised reasonable care to prevent and promptly correct any

sexually harassing behavior, the corporation references its open

door policy and the portion of its employee handbook prohibiting

immoral conduct.

The existence of such a policy is evidenced by the fact that

each and every employee of R & T Mechanical, Inc., who had any

knowledge of Savidge's harassment of Lauterborn and discussed the

matter with her, encouraged her to inform Baughman of the

17

situation.  The unwavering sentiment consistently expressed by those employees (i.e., that Baughman would support Lauterborn) reflects a corporate culture in which the employees were well aware that Baughman was receptive to such concerns and that he would not tolerate sexual harassment.

Lauterborn apparently concedes that R & T Mechanical, Inc., has met its burden with respect to this first element of the affirmative defense because in her opposition brief she does not contest the point or even address this element of the affirmative defense in any manner.  We are of the view that the undisputed material facts show that R & T Mechanical, Inc., exercised reasonable care to prevent and promptly correct any sexual harassment.

The second element of the affirmative defense is that Lauterborn unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  Courts have repeatedly emphasized the practical rationale for this element.  It is widely held that

> the law against sexual harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists.

Parkins v. Civil Constructors, Inc., 163 F.3d 1027, 1038 (7th Cir. 1998).  The United States Supreme Court has noted

> that a victim [of sexual harassment] has a duty to use such means as are reasonable under the circumstances to avoid or

18

minimize the damages that result from violations of the
statute.

Faragher, 524 U.S. at 806, 118 S.Ct. 2275.

In considering whether Lauterborn unreasonably failed to
take advantage of any preventive or corrective opportunities
provided by the employer, or to avoid harm otherwise, we briefly
summarize the specific conduct at issue.  Savidge's harassment
commenced approximately five or six months after Lauterborn was
hired at R & T Mechanical, Inc., in June of 1998.  In addition to
the harassment, Savidge continually threatened Lauterborn that
her job and the job of her husband would be in jeopardy if
Lauterborn reported the harassment.

In 2001 and again in 2003, Weiler confronted Savidge about
Savidge's harassment of Lauterborn and it is undisputed that no
consequences adverse to the employment of Lauterborn or her
husband ever occurred.  For a time Weiler's intervention tempered
Savidge's inappropriate conduct towards Lauterborn.  Throughout
the course of Savidge's harassment of Lauterborn, her co-
employees attempted to persuade Lauterborn to report the
harassment to Baughman.  Lauterborn not only rejected those
attempts, but she requested her co-employees not to report the
harassment themselves to Baughman.  We further note that
Lauterborn's husband was her direct supervisor for at least a
portion of her employment at R & T Mechanical, Inc., and she

never mentioned Savidge's harassment to him.  She also "begged" Weiler not to report the incidents.

Lauterborn argues that her failure to report Savidge's harassment until June of 2004 was reasonable because 1) she reported the conduct to Weiler long before 2004, and 2) "she was concerned that if she reported Mr. Savidge's conduct to Mr. Baughman that both she and her husband would be terminated." (Brief in Opposition to Summary Judgment Motion, p. 7)

We totally discount the fact that Lauterborn reported Savidge's conduct to Weiler because when she did so she specifically asked Weiler not to inform any one else about that conduct.  Consequently, Lauterborn's statements to Weiler do not amount to a "report" of sexual harassment to R & T Mechanical, Inc.

Lauterborn's second asserted reason for failing to report Savidge's harassment warrants additional discussion.  It is true that his threats of an adverse employment action in retaliation for reporting his harassment <u>could</u> constitute a reasonable basis for an employee not to report a supervisor's sexual harassment. *See* Reed v. MBNA Marketing Systems, Inc., et al., 333 F.3d 27, 36 (1st Cir. 2003).  However,

> general statements by a supervisor that a complaint ... will get the employee in trouble cannot be an automatic excuse for failing to use the complaint mechanism.  Claims of ... adverse consequences have to be "credible," ....

Id. (citing Mota v. Univ. Of Tex. Houston Health Sci. Ctr., 261
F.3d 512 (5th Cir. 2001); Caridad v. Metro-North Commuter R.R.,
191 F.3d 283 (2d Cir. 1999), *cert. denied*, 529 U.S. 1107, 120 S.
Ct. 1959 (2000); Distasio v. Perkin Elmer Corp., 157 F.3d 55 (2d
Cir. 1998)).

At least two significant events occurred between the fall of
1998 (when Savidge began harassing Lauterborn) and July of 2004
(when Lauterborn's employment at R & T Mechanical, Inc., ended).
Those events are Weiler's confrontations of Savidge in 2001 and
2003 to discuss Savidge's harassment of Lauterborn.

It is undisputed that neither Lauterborn nor her husband
ever suffered an adverse employment action as a result of those
confrontations.  Each of those confrontations reduced, if not
eliminated, the credibility of Savidge's threats.

From 1998 through the date of Weiler's first confrontation
with Savidge in 2001, it may well have been reasonable for
Lauterborn not to report Savidge's harassment.  Between 2001 and
the date of Weiler's confrontation with Savidge in 2003,
Lauterborn's reasonableness becomes a closer question; a
reasonable finder of fact could conclude that Lauterborn's
failure to report Savidge's harassment during that period was
reasonable.  However, after Weiler discussed the matter with
Savidge a second time in 2003 and Lauterborn realized that no
adverse employment action resulted from that second discussion,

we are of the view that no reasonable finder of fact could conclude that Lauterborn's failure at that point to report Savidge's harassment to Baughman was reasonable.

The undisputed material facts supported by the evidence of record convince us that R & T Mechanical, Inc., exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and that Lauterborn unreasonably failed to report Savidge's harassment to Baughman.  We are of the view that no reasonable finder of fact could make different findings. Under the circumstances of this case Lauterborn is precluded from holding R & T Mechanical, Inc., vicariously liable for Savidge's sexual harassment of her.

We next consider whether the affirmative defense asserted by R & T Mechanical, Inc., applies to the sexual harassment suffered by Lauterborn in Alabama.  This inquiry is pertinent because a reasonable jury could infer that the comments made by Nagy in Alabama (i.e., that Lauterborn was "easy") prompted men at the work site to seek out Lauterborn and that the conduct of those men made Lauterborn decide to return to Pennsylvania.  Although Nagy worked on the day shift and Lauterborn on the night shift, for practical purposes Nagy was a supervisor of Lauterborn in Alabama.

For the reasons set forth above, R & T Mechanical, Inc., has met the first element of the defense (i.e., whether the

corporation exercised reasonable care to prevent and correct promptly any sexually harassing behavior).  The second element is whether Lauterborn unreasonably failed to take advantage of the corporation's corrective opportunities in response to the harassment she experienced in Alabama.  Our consideration of this question centers on the telephone conversation that Lauterborn had with Baughman on July 15, 2004.

Lauterborn did not inform Baughman of the sexual harassment during that call because she wanted to avoid the repercussions resulting from her report of being sexually harassed (i.e., the potentially negative reactions of her co-employees).  The United States Court of Appeals for the Fourth Circuit has reached the following conclusion:

> Not only is it embarrassing to discuss such matters with company officials, but after the harassed employee overcomes this hurdle she may have to deal with a negative reaction from co-workers.  While such events might cause an employee stress, the unpleasantness cannot override the duty to report sexual harassment.

Matvia v. Bald Head Island Mgmt., 259 F.3d 261, 270 (4th Cir. 2001).  That principle applies in this case.

We are of the view that the potentially negative reaction from Lauterborn's co-workers in Alabama which is the only reason she asserts for failing to report the Alabama harassment to Baughman, is a legally insufficient basis for Lauterborn not to report that harassment to Baughman during the July 15, 2004, phone call.  Therefore, the affirmative defense is valid as to

the Alabama harassment and Lauterborn may not hold R & T
Mechanical, Inc., liable for those events in connection with her
sexual discrimination and harassment claims in count 1 of her
complaint.

Our review of the undisputed material facts which are
supported by the evidence of record leads us to conclude that R &
T Mechanical, Inc., may avail itself of the affirmative defense
discussed above in connection with all of the harassment at issue
in count 1 of Lauterborn's complaint.  Consequently, R & T
Mechanical, Inc., is entitled to summary judgment on that count.

In count 2 Lauterborn claims that R & T Mechanical, Inc.,
unlawfully retaliated against her for reporting incidents of
sexual harassment.  The Court of Appeals for the Third Circuit
has stated the following in the context of considering whether
summary judgment should be granted on such a claim:

> Under our precedent, to advance a prima facie case of
> retaliation, a plaintiff must show that: (1) the employee
> engaged in a protected employee activity; (2) the employer
> took an adverse employment action after or contemporaneous
> with the employee's protected activity; and (3) a causal
> link exists between the employee's protected activity and
> the employer's adverse action. *See, e.g., Kachmar v. Sungard
> Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir.1997); *Jalil
> v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989); *see also
> Krouse v. American Sterilizer Company*, 126 F.3d 494, 500 (3d
> Cir.1997)(describing the third requirement as a "causal
> connection").

Farrell v. Planters Lifesavers, Co., 206 F.3d 271, 279 (3d Cir.
2000).

It is not disputed that Lauterborn has met the first element by establishing that she ultimately did discuss with Baughman Savidge's sexual harassment of her.

The second element to be shown is "an adverse employment action after or contemporaneous with the employee's protected activity." The only such action alleged by Lauterborn is the termination of her employment.

The undisputed facts presented to us show that Lauterborn walked out of Baughman's office on July 19, 2004, before their conversation about her employment ended. Baughman never said to Lauterborn that her employment at R & T Mechanical, Inc., was terminated. Based on those facts we conclude that no reasonable finder of fact could conclude that R & T Mechanical, Inc., terminated Lauterborn's employment.[1]

One reason to grant R & T Mechanical, Inc.'s, motion for summary judgment as to count 2 of the complaint is that Lauterborn has not shown that R & T Mechanical, Inc., took an action which was adverse to her employment there. However, that is not the only reason for such a ruling.

The third element Lauterborn is required to establish with respect to her retaliation claim is that a causal link exists between the employee's protected activity and the employer's

---

1. At no point has Lauterborn alleged that she was constructively discharged from R & T Mechanical, Inc. The facts of record do not support such an allegation.

adverse action.  Lauterborn first argues that the termination of her employment shortly after she reported Savidge's sexual harassment and the harassment in Alabama to Baughman fulfills this element.  The Court of Appeals for the Third Circuit has held that timing alone is not enough to establish the required causal connection. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997).

In addition to the timing of the relevant events, Lauterborn cites the critical comments Baughman made to Lauterborn during their conversation on July 19, 2004.  We are of the view that it is necessary to consider those statements within the context of the entire evidentiary record.

Baughman had immediately fired Savidge, a personal friend, when Baughman learned of Savidge's sexual harassment of the plaintiff.  Lauterborn knew that, after Savidge's employment had been terminated, Baughman wanted her to report any further sexual harassment promptly.  Lauterborn failed to report the harassment in Alabama during the telephone conversation with Baughman on July 15, 2004, and in fact she lied to Baughman about her reasons for returning to Pennsylvania.  And perhaps most importantly, the comments now referenced by Lauterborn were made in the course of an ongoing discussion which Baughman apparently was willing to continue.  None of the statements cited by Lauterborn could be construed as Baughman's final word on the matter.  It is

undisputed that Lauterborn ended the conversation by walking out of Baughman's office and refusing to answer his query "Is that the end of our conversation?"

We further note that on July 15, 2004, Baughman had instructed Lauterborn that before she left the job site in Alabama she would have to obtain the permission of Nagy and Weiler to leave, and that even if such permission were obtained, there "might not be" work for her in Pennsylvania. Lauterborn admits that she failed to approach Nagy for his permission. She stated that even "[i]f it costs my job [then] it costs my job, but I'm not going to go to [Nagy]." (Lauterborn Deposition of July 30, 2006, p. 238, lines 2-4)

Based on those facts, Lauterborn was aware that there might not be work for her in Pennsylvania, and she disobeyed an instruction she received directly from Baughman. Consequently, even if one could conclude that Baughman did in fact terminate Lauterborn's employment, the termination was not based on any protected activity undertaken by Lauterborn.

Based on the undisputed material facts supported by the evidence of record, we are of the view that no reasonable finder of fact could conclude that a causal connection exists between Lauterborn's reports of sexual harassment to Baughman and the termination of her employment at R & T Mechanical, Inc.  R & T

mechanical, Inc., is entitled to judgment as a matter of law on the claim in count @ of Lauterborn's complaint.

We will grant the Defendant's motion for summary judgment.

NOW, THEREFORE, IT IS ORDERED THAT:

1. The motion (Document 13) for summary judgment filed by R & T Mechanical, Inc., is granted.

2. The Clerk of Court shall enter a judgment in favor of R & T Mechanical, Inc.

3. The Clerk of Court shall close this file.


s/Malcolm Muir
MUIR, U.S. District Judge


MM:gja